ADAMS v. SIMS. (No. 2136.)

(Court of Civil Appeals of Texas. Texarkana. June 26, 1919. Rehearing Denied July 3, 1919.)

1. ACCOUNT ⬉17(1)—PETITION NOT DEFECTIVE IN NOT STATING WHETHER CONTRACT WAS ORAL OR WRITTEN.

Petition by the buyer of merchandise to recover from the seller the difference between what the seller had agreed to account for, on account of sales made by him after the transaction, but before possession changed, and the amount which he had actually accounted for, was not defective because it did not state whether the contract between the seller and buyer was oral or in writing.

2. ACCOUNT ⬉8 — EVIDENCE SUFFICIENT TO SHOW ORAL AGREEMENT TO ACCOUNT.

In suit by the buyer of merchandise to recover difference between what the seller had agreed to account for, on account of sales after the transaction, but before possession changed, and what he actually did account for, merely because the written contract showed the seller was the owner prior to a certain date, he was not necessarily excused from responsibility for what he had disposed of previously, there having been an oral arrangement to that effect.

Error from District Court, Smith County; J. R. Warren, Judge.

Suit by W. F. Sims against James R. Adams. To review a judgment for plaintiff, defendant brings error. Affirmed.

Price & Beaird, of Tyler, for plaintiff in error.

Simpson, Lasseter & Gentry, of Tyler, for defendant in error.

HODGES, J. Previous to the transaction hereinafter referred to, J. R. Adams, the plaintiff in error, was engaged in the hardware business in the city of Tyler. On January 20, 1914, he and W. F. Sims, the defendant in error, entered into a verbal agreement by the terms of which Adams sold to Sims his entire stock of merchandise then on hand for the sum of $70,000. Adams at the time had a number of commercial creditors, whom the parties wished to notify in compliance with the Bulk Sales Law, and the trade could not be closed on the above date. It was agreed that Adams should continue in charge of the business until his creditors could be arranged with, and that he should account to Sims for all goods sold by him after January 20th. On February 6th Adams and Sims had another agreement, by which the possession of the stock of goods was to be turned over to Sims, and the latter was to deposit the consideration with T. B. Butler to be held by him until the creditors of Adams had been notified and arranged with in compliance with the Bulk Sales Law. Adams agreed to account to Sims for $2,884, claiming that that was the value of all the goods sold by him

---

since January 20th. A written contract was entered into on February 6th, which recited the sale by Adams of his entire stock of merchandise and a deposit by Sims with Butler of the consideration, less $2,884, the amount claimed by Adams as the sum received from the sale of goods after January 20th. As making 'up this sum there was an item of $374.50, which Adams claimed was the value of goods shipped to Tom Eads at Murchison. On June 6, 1914, Sims ascertained that Adams had not accounted to him for all the goods that had been removed from the stock after January 20th, but did not at the time know or suspect, according to his testimony, that more than $374.50 had been shipped to Eads before he took possession of the goods on February 6th. It appears from the evidence that a suit resulted between Adams and Eads, in which it was disclosed that Adams had sold to Eads, out of the stock which he had agreed to sell to Sims, largely more than the amount he had accounted for. Sims instituted this suit against Adams for the purpose of recovering the difference between the amount of goods Adams had actually disposed of between the dates of January 20th and February 6th, and the amount he had accounted for.

In a trial before a jury the following facts were found in response to special interrogatories: (1) That Adams had sold to Eads, after January 20, 1914, out of the stock which he had agreed to sell to Sims, goods amounting to $2,057; (2) that at the time the contract was consummated, on February 6, 1914, Adams accounted for only $374.50 as having been sold to Eads; and (3) that Sims, in making the contract on February 6th, relied on Adams' statement as to the quantity of goods he had disposed of. Upon these and other answers the court entered a judgment in favor of Sims for the sum of $1,711. Adams appeals, and assigns as error the refusal of the court to sustain an exception to the petition of the defendant in error and to give a peremptory instruction in his favor.

[1, 2] It is contended that the petition was defective because it did not 'state whether the contract between Adams and Sims was oral or in writing. It is also insisted that the court should have instructed a verdict for Adams, because the written contract showed that Adams was the owner of the goods prior to February 6th, and could not be held responsible for what he had disposed of previous to that time. Both of these assignments are without merit. This is a suit by Sims to recover from Adams the difference between what Adams had agreed to account for, and should have accounted for, and what he did account for.

The finding of the jury sustains the judgment of the court, and the testimony supports the findings of the jury. The judgment is therefore affirmed.